(C. D. 369)

C. E. DIPPEL & CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 25, 1940)

*Strauss & Hedges* (*Howard C. Carter* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the ports of Boston and New York, brought to recover certain customs duties alleged to have been improperly exacted on

particular importations of meat-cutting machines. Duty was levied thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930 as articles having as an essential feature an electrical element or device. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

A blueprint of one of said machines is in evidence as Illustrative Exhibit A, and a pictorial representation thereof as Illustrative Exhibit B. The plaintiff-corporation also offered the testimony of C. E. Dippel, its president, who testified that he was thoroughly familiar with the operation of said machines, having assembled the same. Referring to said blueprint (Ill. Ex. A) he stated that the operating power of the machine was transmitted through the medium of the main drive shaft "A"; that the V-belt and V-pulley transmit the power to the upper drive shaft "D" which moves the plunger "E" upward and downward in operating the feed mechanism; that there is a chain "C" connecting the main drive shaft "B" which regulates the rate of speed of the feed mechanism; that power is also transmitted to a shaft "F" which operates the knife system; and that the machine as imported has no parts operated by electricity, nor is there anything electrical about the machine.

In response to questions by the court, the witness stated that of the two machines imported one was in Boston but not in operation, and the other had been moved from plant to plant.

The witness testified that he did not know by what power the second machine was being operated; but that there was no electric motor in the machine itself.

On cross-examination the witness testified that the machine was enclosed in a metal housing, but that there was an opening in said housing; that some machines similar to the machines at bar were sold with a motor purchased in the United States, and that in the case of the machine which the witness installed in Boston an electric motor was placed in the base of the machine.

On redirect examination the witness testified that the metal plates enclosing the machines could be removed by unscrewing six screws on the top.

In response to further questions by the court the witness testified as follows:

By JUDGE DALLINGER.

Q. * * *. What alteration would you have to make in that machine besides taking off the plate in order to operate it by steam, say?—A. All, in my opinion, it would need, is a pulley sufficient to hold a belt by which the power is transmitted from the gasoline engine or steam engine.

Q. Was there any pulley there, or would you have to install the pulley?—A. A pulley would have to be installed.

Q. In other words, there would have to be considerable work done in order to make that machine capable of being operated by some power other than electricity?—A. I would call it minor work, your Honor.

On recross-examination the witness testified as follows:

R. X Q. There is no shaft extending beyond the housing which encloses this machine?—A. The shaft? Is that the main drive shaft you are questioning me about?

R. X Q. Any shaft.—A. Any shaft. They extend beyond the housing.

R. X Q. They do?—A. Yes, they do, on the picture.

R. X Q. Make a mark on the picture.—A. It is marked there. It is right on top there. It extends.

R. X Q. That is not the drive shaft.—A. You said any shaft.

R. X Q. You couldn't put a pulley on there and run the machine, could you?—A. Not to perform in the fashion as the machine is to perform, no.

R. X Q. So, in order to put a pulley on, you would have to extend the drive shaft beyond the housing, wouldn't you?—A. Not necessarily

R. X Q. Where would you put the pulley?—A. You could make any kind of adjustment, if you want to look at the drawing.

R. X Q. It comes in, as shown in the picture, all enclosed in a metal housing; that is what you imported?—A. But you asked me a question whether on the picture there was any sign of an extended drive shaft. Now, on the picture, there is not, because the picture doesn't show that side, sir.

R. X Q. The main drive shaft runs horizontal at the side of that picture?—A. Yes, sir; but you can't see it here.

R. X Q. It is enclosed?—A. You can't see the main drive shaft extending into the back of the picture.

On re-redirect examination the witness testified that there was nothing electrical about the machine.

Upon this record counsel for the Government, in his brief filed herein, after referring to the fact that the only witness in the instant case testified that with a few minor changes such as the removal of the plates on the housing and the installation of a pulley on the drive shaft, the machine could be operated by any power by the use of a belt, calls attention to the fact that the same witness on cross-examination testified that it was manifest that the machine was designed to be operated by an electric motor, and therefore contends that the case of *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. 51, T. D. 47050, is here controlling. We do not agree with this contention. It is uncontradicted that the machines at bar in their imported condition were unaccompanied by electric motors and had nothing electrical about them, and that with a few minor changes could be operated by any form of power. It is to be noted that the appellate court in *United States* v. *Dryden Rubber Co.*, *supra*, said, as quoted in Government counsel's brief, as follows:

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

In the case of *R. F. Downing & Co., Inc., et al.* v. *United States,* T. D. 47235, 66 Treas. Dec. 210, we held that the mere fact that machines may be operated by electric motors made in this country, or interchangeably by some other power, did not necessarily make them classifiable under said paragraph 353. In that case we said:

It may well be that the collector based his classification of the importations under said paragraph on the theory that in the condition in which they arrived the articles are susceptible of operation by an electric motor and would probably be so driven, and that that circumstance *ipso facto* determined their dutiability under the paragraph. However, the testimony is that the mechanisms are offered for sale and are actually sold without such motor, and that they can be operated by power other than electricity. For aught the record discloses, the prospective purchaser may find it more convenient for his purposes to use a gas engine, steam engine, or other power device than an electric motor. To do so would require merely the installation of the necessary pulley arrangement, as above indicated. In no sense could such an adjustment be construed as an alteration of the machine itself. The latter's functions and internal mechanism would still remain intact and undisturbed. But should the prospective purchaser decide to employ an electric motor, he would in all likelihood use one of American make, since the witness said that would be most suitable. If so, may it successfully be contended that the imported mechanism, without its American motor, is any the less an entirety for tariff purposes? We hardly think so. If the motor is necessary to make the mechanism an entirety, then the same must be true of the domestic gas engine, or steam engine, if either of such engines is used. In other words the test of classification would be not what the imported article is, or what it contains in the way of devices, but rather by what power it might be operated. If it is susceptible of operation by steam, gas, or electricity, as in the present case, then the collector must indulge speculation as to its correct tariff status.

We cannot conceive that it was the intention of the lawmakers that classifying officers should be obliged to resort to any such haphazard and indefinite method of procedure in order to determine whether or not a given article is covered by said paragraph 353, particularly when it is borne in mind that tariff laws are generally intended to be operative only against goods, wares, and merchandise imported into the United States from foreign countries, and that the duties imposed thereunder attach to said merchandise in the precise condition in which it is imported.

It is to be observed that in the instant case it is uncontradicted that the machines at bar in their imported condition have nothing electrical about them.

On the established facts and the law applicable thereto we hold that the meat-cutting machines constituting the imported merchandise at bar are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as machines not specially provided for, as alleged by the plaintiffs. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.