(C. D. 590)

C. E. DIPPEL & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 2, 1942)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*Howard C. Carter* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States; arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of meat-grinding machines. Duty was levied thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930 as articles having as an essential feature an electrical element or device. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

At the hearing held at New York the plaintiff offered in evidence the testimony of C. E. Dippel, president and general manager of the plaintiff-corporation, who testified in part as follows:

By Mr. CARTER.

Q. Are you the C. E. Dippel that testified on February 13, 1940, in the matter of protest 974224–G in the name of C. E. Dippel & Company, Incorporated?— A. I did if that is the protest. There are several protests. I would like to see the evidence. Yes, I am the same man.

Q. Are the meat grinders EMWF–150 and EMWL–200 covered by these two importations the same or different?—A. They are somewhat different.

Q. How do they differ?—A. Well, I tried to explain that before. In one of those plants that manufactures bolognas there are several functions necessary and for each one of those functions they need a different machine.

Q. Is the meat grinder EMWF–150 and the meat grinder EMWL–200 the same or different?—A. The meat grinders are identically the same, except for the size.

Q. So that you wish to correct your previous answer that they are different?—A. I do, if that refers to meat grinders.

\*    \*    \*    \*    \*    \*    \*

Q. At the time these meat grinders were imported was there any motor, electric motor, part of these importations?—A. No. \*  \*  \*

\*    \*    \*    \*    \*    \*    \*

Q. Was there any wiring or switches on these machines?—A. No, I don't believe so.

Q. Do you know?—A. Well, of course it is a long time ago. I don't think so. I am pretty certain there was none.

Q. Was there any electrical heating element in those machines or part of them?—A. There is no electrical element on the machines whatsoever.

Q. With reference to the slicer MC–60 covered by Entry 832813, Protest 25169–K, was there any motor that accompanied that machine?—A. May I see that again?

Q. Entry 832813, Protest 25169–K.—A. No motor was attached to that machine.

Q. Was there any wiring or switches or electrical heating element or anything of that nature on that machine?—A. \*  \*  \*  I don't think so.

Q. Do you know?—A. Of course I never order them but all things are possible. I don't think so. I am pretty certain no electrical element was attached to any one of those machines because we didn't get any.

At this juncture counsel for the plaintiff moved to incorporate the record in protest 974224–G, decided in C. D. 369, on the ground that the merchandise involved herein was substantially the same, the issue the same, and the parties the same as in the cited case. Counsel for the Government objected to the incorporation on the ground that the merchandise was not substantially the same. The court denied the motion to incorporate. The witness then proceeded to testify in part as follows:

By Mr. CARTER.

Q. Is it possible, basing your answer on your experience, to operate the machines before the court by any source of power?—A. Yes, by making necessary changes.

Judge KINCHELOE. That is, by electricity, or by steam, or gasoline?

The WITNESS. Yes, sir.

By Mr. CARTER.

Q. Suppose you wished to install a gasoline motor in these machines before the court, how would you do it?—A. Well, there would be no change whatever, in my opinion.

Judge KINCHELOE. What would you have to do with the machine?

The WITNESS. Well, just install a gasoline engine at the base of the machine.

By Mr. CARTER.

Q. How big a space in the base of the machine is there in which that motor would be installed?—A. The space in the base of the machine is certainly limited. But for the size of the engines that are available and necessary to operate the machine, it is large enough.

Q. Suppose you wished to operate these machines by overhead shafting, how would you operate the overhead shafting?—A. In that case, we would have to make slight changes.

Q. How long would that take?—A. It would take about an hour for an engineer or a mechanic to do it.

Q. And by means of that overhead shafting would you be able to connect up to the machine any source of power you wanted? Could you use a steam engine?—A. Steam engine, yes.

Q. Water power?—A. Water power.

Q. Or gasoline engine?—A. Yes.

Q. Does your testimony apply to all the sizes of the machines covered by these two importations?—A. It does.

On cross-examination the witness testified in part as follows:

X Q. Mr. Dippel, do you put out a pamphlet entitled "50 years Alexanderwerk-Butchers Machinery—1885–1935"?—A. No, do not.

X Q. Do you or have you distributed that pamphlet?—A. We may have distributed it on behalf of the factory.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. That contains pictures of different machines used on meat products?—A. That is correct.

X Q. I show you that pamphlet and direct your attention to page 9, and ask you if that is a picture of the machine known as EMWF–150 and EMWL–200?——

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. This is a picture of the machines. This has been produced many, many years ago. I handed a thing like that to Mr. Grass, but we have our own circular.

Judge KINCHELOE. You mean you didn't distribute a pamphlet like that?

The WITNESS. We did not, not what we call a regular distribution. We have our own printed circulars. In fact, Mr. Carter has one of those.

By Mr. FITZGIBBON.

X Q. Is that a picture of the machines known as EMWF–150 and EMWL–200?—A. It is an illustration of those machines.

X Q. And it is entitled, "Electric Pedestal Mincer with motor fitted in pedestal"?—A. Yes.

At this juncture page 9 of the said pamphlet was admitted in evidence as defendant's exhibit 1 over objection interposed by counsel for the plaintiff.

The cross-examination of the witness then continued as follows:

X Q. Now, I direct your attention to page 13 of this same pamphlet, and ask you if that is a picture of the meat cutter, MC–60?—A. It is an illustration of the cutter, MC–60.

[Said page 13 was then admitted in evidence as defendant's Exhibit 2 again over objection interposed by counsel for the plaintiff]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Judge KINCHELOE. That pamphlet that he has there and that contains those illustrations of the different machines, that pamphlet is gotten out by the manu-

facturer from whom you bought these machines covered by the instant importations?

The WITNESS. For home consumption in Europe.

Judge KINCHELOE. Well I say that is gotten out by the manufacturer of these machines here before the court?

The WITNESS. Right; printed in their own plant.

By Mr. FITZGIBBON.

X Q. Printed in English?—A. Printed in English, not German; quite right.

X Q. I show you page 7 of this pamphlet and ask you if that is not an illustration of a mincer with fast and loose pulleys for belt drive?—A. That is one with pulleys, and the other probably for belt drive.

X Q. That is the same as the one on page 9, Exhibit 1, with the exception that is for belt drive and the other is for a motor, electric motor, in the base?—A. I don't know because I never had these machines.

\* \* \* \* \* \* \*

[Page 7 of the pamphlet referred to was then admitted in evidence as defendant's Exhibit 3, also over objection interposed by counsel for the plaintiff.]

By Mr. FITZGIBBON.

X Q. You say you don't import any of the belt driven machines?—A. I am not interested in those machines.

X Q. Because they have the pulleys for belt drive?—A. Perhaps in other respects they are very antiquated. I don't know the qualities or disqualities of this particular machine you have on that particular page. I don't know what it is. I never saw that machine.

X Q. You say you don't import electric motors?—A. No, we do not.

X Q. You put motors in the base of the machines before you sell them?—A. Not necessarily.

\* \* \* \* \* \* \*

X Q. Have you ever sold one of these machines without a motor in the base?—A. We sold machines without a motor in the base.

X Q. Where?—A. I would have to look that up in my records.

X Q. When?—A. When I get back to the office I can look it up.

\* \* \* \* \* \* \*

X Q. You don't know when you sold them?—A. I don't know.

\* \* \* \* \* \* \*

X Q. Referring specifically to these particular machines, did you put motors in the base of them?

\* \* \* \* \* \* \*

A. You mean these machines here?

Judge DALLINGER. You testified you saw these machines at the time they were imported. Now he is asking you about these particular machines.

The WITNESS. Yes, but we have had several importations.

Judge DALLINGER. But he is only asking you about these particular importations.

The WITNESS. I don't know about these; I don't know whether these have been sold or not.

On redirect examination the witness testified in part as follows:

By Mr. CARTER.

R. Q. Who printed this paper which I now show you?—A. We issued this pamphlet.

Judge Dallinger. You mean your firm?

The Witness. The firm of C. E. Dippel & Company.

Judge Dallinger. In what year?

The Witness. In 1938, I believe.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Judge Dallinger. Does it illustrate any merchandise that is before the court this morning?

The Witness. It does.

By Mr. Carter.

R. Q. Which machines does it illustrate?—A. Both the machines, the EMWF–150 and EMWL–200.

[The pamphlet in question, without objection, was admitted in evidence as plaintiff's Exhibit 4.]

R. Q. Does any of the context of defendant's Exhibit 1 apply to plaintiff's Exhibit 4?—A. Yes.

R. Q. What portion of it? Will you read it into the record?—A. Exhibit 1 reads, "Alexanderwerk—Electric Pedestal Mincer"; that is not at all mentioned in Exhibit 4.

R. Q. Is there anything about Exhibit 4 in its condition as imported which has anything to do with electricity or electric motors?—A. It has not.

On recross-examination the witness testified in part as follows:

R. X Q. On Exhibit 4, underneath the picture are the words, "Totally enclosed Motor with silent V-belt drive; streamlined beautiful and sturdy' exterior"; are they not?—A. That's right.

R. X Q. And that means there is an electric motor in the base?—A. It doesn't say electric motor.

R. X Q. What kind of a motor does it mean?—A. It might mean any kind of a motor.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

R. X Q. You put that out in the trade, Exhibit 4?—A. Yes.

R. X Q. And when you put it out you used the words "Totally enclosed Motor", and you meant an electric motor, didn't you?—A. Whether I mean it or not, it doesn't say so.

Judge Dallinger. That may be stricken. Answer the question yes or no.

The Witness. I mean electric motor, yes.

On this record we are satisfied that this case is not governed by our decision in *C. E. Dippel & Co.* v. *United States,* 5 Cust. Ct. 55, C. D. 369. In that case there was testimony that all that was necessary to change the type of drive of the machine there in issue was to take off a plate in the housing and add a pulley. There is no such testimony in this case.

On the fourth page of the pamphlet, exhibit 4, which counsel for the plaintiff admits represents the instant merchandise, underneath the pictorial representation of the machine in question, occur the words "Totally enclosed Motor with silence V-belt drive; streamlined beautiful and sturdy exterior." And furthermore, at the bottom of the preceding page occurs the following interesting statement: "When ordering please state current and voltage of electric supply."

Upon the entire record, taking into consideration the demeanor on the stand of the only witness who appeared herein for the plaintiff, we find as a fact and hold as a conclusion of law that the machines constituting the imported merchandise at bar are unfinished articles having as an essential feature an electrical element or device within the meaning of paragraph 353 of the Tariff Act of 1930, as classified by the collector. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.